Good morning, Your Honors. Whatever happened to all the male lawyers? Pardon me, Your Honor? All the male lawyers playing golf? They're lucky. No, they're not. You'd rather be here. Good morning, Your Honor. It is a pleasure to be here, Your Honors, and good morning to you. May I please the Court? What I would like to address is whatever issue the Court feels may need expounding upon. I would be happy to go right to that issue. Help me understand the equal protection claim. The equal protection claim, Your Honor, is a claim, as the Court knows, we filed only in our reply papers as a result of the Cordes matter coming down right after we had filed our opening brief. In Cordes, that defendant was similarly situated. Actually, she was appealing a final order of deportation, and that particular individual was a defendant that had pled guilty to a misdemeanor for dissuading her child with the use of threat or force from allegations that she had made against her boyfriend back in May of 1996. Again, it's a post-ADPA conviction, pre-IRIRA situation, just like the situation with Mr. Rivera-Sanchez. And in that particular case, the Ninth Circuit did hold that she did have an equal protection, that there was an equal protection violation when 212C relief was available for her, especially where other LPRs that were similarly situated were entitled to 212C relief under St. Cyr, and the only difference happened to be the timing of the entry of her plea. And in that case, of course, as this Court knows, the Court found that the disparate treatment of Cordes and those LPRs who are entitled to 212C relief under St. Cyr lacks a rational basis. We have argued in our papers that Rivera-Sanchez's situation is similar to Cordes. He, too, was an LPR like Cordes. He, too, had pled guilty to an offense in July of 1996, and he, too, also had many equities in terms of a family that was here, U.S.-born children. He was a homeowner, and he had a long-term employment history in California as well. And because of, again, the arguments and the holding in Cordes, Rivera-Sanchez, who was an LPR since 1991, who also, again, pled guilty to an offense that was not deportable, was not an aggravated felony at the time, and four years for a sexual offense was, I mean, sometimes you, some of these offenses, as you say, really wasn't much. This was a pretty serious offense. Well, Your Honor, in this particular case, he was sentenced to four years. He did serve his time, and he did enter into that plea to an amended information as an LIO, and he served his sentence. And all indications that he had from his counsel at that time was that he was non-deportable, non-aggravated felony, and he would not have to worry about being pulled away from his family. And so with those assurances, with all the waivers of his rights, with the quid pro quo, the plea agreement, that didn't happen. And under IAERA, when the IJ reads that law and then, again, fails to advise him of what potential plausible legal claims he might have or challenges to that new law as applied to him, he is then, of course, not making a knowing and voluntary considered and intelligent waiver of appeal. And next thing you know, the order of removal is ordered, and he is deported and taken from his family, banished from this country, all of his family, all of his family ties, and banished to Mexico, a place that he hadn't known since he was a teenager, and told to start over again. What were the facts on the underlying offense? The facts of the assault with intent to commit a lewd act on a child? Your Honor, in that case, as I can make out from the record, that there was no actual penetration involved with that case. How old was the child? I'm sorry, I would be guessing to say, my guess, my knowledge is it was under 14, but that there had been a party and that my client had something to drink at the party, and then there were a number of people crashed out in, like, a garage or a pool house area. A lot of people had fallen asleep on sleeping bags and beds. And he was found with his underpants pulled down and laying on top of a fully clothed sleeping child. The child in the particular case was not aware that anything had occurred. My client was confronted by the people involved, by the parents, and he was arrested, and he cooperated in every sense and went down and suffered the conviction for it. He has paid his debts to society since then. He was taken from his family for a period of four years. He was a Hispanic male sentenced in that offense where there was actually no touching. Well, something went on if he got four years. Pardon me, Your Honor? If he got four years, I think something else went on. That's all that we have from the record. Based on that, Your Honor, the ---- Did he register as a sex offender? That is a requirement. But he was never even released from custody before the order, the notice to appear at the proceedings. He still registered as a sex offender. That's one of his requirements. Yes, Your Honor. And procedurally, what we've ---- the way this case presents to us is we're ---- you're bringing a collateral challenge to his deportation based upon the failure of the I.J. fully to advise him as to his appeal rights. That's correct, Your Honor. And that would ---- in that regard, the challenges have been twofold, the first one being that there was a ---- that there was no effective, lawful advisal of appeal rights. As this Court will recall from a review of the record here, there was simply a group advisal. Yeah. Assuming that he was not properly advised, I still have trouble ---- and assuming that were this a straight-up case without procedural twists that would give me ---- Assuming that it would be a violation of equal protection for him not to be allowed some shot at a 212C, which may or may not be true, but assuming that's true, that's not the question directly presented to us. The question really is as to whether that I.J. should have foreseen something like Cordis quite a few years before Cordis showed up, or is that not the question? Well, I think anticipated Cordis before Cordis showed up, and I think anticipated their retroactivity issue. As I would also hope to address, I believe that even though Cordis also found the ---- found the retroactive application of 321 to be lawful and not a violation of due process, I believe that case was wrongfully decided. Indeed, very short on analysis, and it was the wrong direction for this circuit, and this circuit should adopt the more fully full analysis of Judge Pragerson's concurrence in Ubaldo because this is exactly that second prong of the Ubaldo case. Yeah. That's a tough argument to make to a three-judge panel. Your Honor, I'm aware of that, but I believe that the situation is not too different from Leon Paz and from ---- my name is escaping me. But the Court in ---- The Court in Polaris, Golan, this Court also addressed something of that issue. What is the I.J.'s duty basically to anticipate the legal, plausible legal challenge to the deport order? And as I read the government's latest letter brief to this Court, she's ---- the government seems to be taking that position that they have no obligation to do that. And yet, under Polaris, Golan, from this circuit in 2004, and under Leon Paz, they addressed that. Now, in ---- as this Court will recall, in Polaris, that was the case where the I.J. had made a determination that that penal code section, I think it was 646.7 or something, about the annoy and molest statute was, and it was a misdemeanor, was to be considered an aggravated felony. And the Court found, you know, that that was an error and that he would have had a plausible legal challenge to that definition based on statutory construction interpretation. And so, therefore, the Court erred. They also cited to Leon Paz and pointed out very instructively that in that case that I.J. was being asked to make a determination pre-St. Cyr that Leon Paz actually did have 212C, another judicial, you know, interpretation of the statute. So based on that, Your Honor, I think this Court can still find the I.J. did err in two respects. One, not in the full advisal of my client's appellate rights, where he's standing before the I.J. in a very important hearing that many of those hearings are being used for as a predicate element for these re-entry offenses every day, and yet no appointed lawyer. And in this case, there was no lawyer present. In this case, there was a translator translating. And a review of the record would indicate that my client participated very minimally. A lot of the conversation took place between the Court and the other government official that was there doing the prosecuting the case. So. Kennedy. Well, I think we understand your argument. Thank you, Your Honor. Thank you. Good morning, Your Honors. Mary Phan for the United States. I have three points. First, and conclusive for this appeal, the collateral attack is foreclosed by Mr. Rivera. It's a case that, as a district court, properly found. The record shows that Mr. Rivera was advised of his appellate rights. He unequivocally indicated that he would waive those rights. Analytically, this case is on thaws with this Court's decision in Estrada-Torres, which also involved a group advisal of appellate rights and then a waiver of those rights. I point to excerpts of record 48 where the I.J. actually orally advised of the right to appeal to the Board of Immigration Appeals, the right to ask that deportation be stayed during the pendency of that appeal. And that was an oral advisal of rights. And in addition, there was the additional protection on page 47, we see, there's the additional protection of the written statement of rights as well. So given that the advisal and waiver was proper, I wanted to briefly address the notion that I.J.s are required to be clairvoyant scholars of constitutional law and that they should advise claimants of potential challenges to their rights and eligibility for relief. The short answer is this Court has decided the issue. That claim is foreclosed by this Court's decision in Garza-Sanchez. So in short, this collateral attack is foreclosed, and there's no need to go beyond that. But I will briefly address the Cordes issue. And the point is simply that Cordes is an opposite to this case, which involves a very serious crime of attempted sexual abuse of a minor. To give some background as to why Cordes is inapplicable, a little bit of background as to ORIRA Section 321 as an order. ORIRA Section 321 did two very different things. First, it corrected a serious omission in the definition of an aggravated felony by adding rape and sexual abuse of a minor to the definition right after murder, showing that these crimes are deemed very grave offenses. Second, and very differently, ORIRA Section 321 also lowered the sentence length criterion on preexisting categories of aggravated felonies, thus arguably opening the door to less serious crimes. Cordes involved the latter instance. By cutting the sentence length criterion, Congress created a class of persons in their category of offense. For example, in Ms. Cordes' case, obstruction of justice, with two subgroups, the pre-ORIRA group having the more serious offense, the post-ORIRA group having arguably the less serious offense as measured by sentence length. And Cordes held that it didn't make sense, it was wholly irrational to treat the less serious group more harshly. That holding only applies to those who became aggravated felons because Congress lowered the bar on the preexisting categories of crimes so that it's colorable to say that the post-ORIRA group had less serious crimes. That rationale is entirely the opposite when it comes to sexual abuse of a minor or rape. Strongest evidence of intent of all text shows the grave nature of these offenses, the serious weight Congress wished to accord. It comes at 1101A1, right after murder. But we also have legislative history, which also makes clear the purpose behind adding those crimes. Senators Coverdale and Bob Dole were sponsors to a precursor provision. And that comes out in the Immigration Control and Financial Responsibility Act, which is a precursor to ORIRA. And introducing the provision, Bob Dole said that there are a number of crimes that should be grounds for deportation that are left unaddressed, and the wording of the statute itself uses vague language like crimes of moral turpitude that lack the certainty we desire. This amendment seeks to remedy this problem by making clear that our society will not tolerate crimes against women and children. It is not too much that we insist that we treat crimes against women and children as seriously as we do other offenses. And that is at 142 Congressional Record S4058. So just briefly, I wanted to note that assault to commit a lewd act on a child does fall in the category of attempted sexual abuse of a minor. This Court in Verona, Medina held that lewd and lascivious conduct, California Penal Code Section 288A, is categorically a sexual abuse of a minor. The California Supreme Court in People v. Rupp held that essentially PC220, assault with the intent to commit a crime, is an aggravated attempt of that crime. So essentially, this assault to commit, this assault with the intent to commit is aggravated attempted lewd and lascivious conduct on a minor. And under 1101A and U, which provide that attempts are treated just the same, it's clearly an aggravated felony, the aggravated felony of attempted sexual abuse. of a minor. The Court's rationale about the irrationality of treating less serious offenses more harshly doesn't clearly, clearly does not apply to the serious offenses that are serious enough to constitute attempted sexual abuse of a minor. But I'd also like to point out Kabasug v. INS, C-A-B-A-S-U-G v. INS, a case of this nature, it's clear that differential treatment of criminal aliens with different criminal histories does not affront equal protection, doesn't implicate that issue. Rather, it is treatment, differential treatment of people alike, aliens alike, in their conviction that may implicate equal protection. Here, unlike in Cordis, we have different treatment for different crimes, not differential treatment with the people who have the same category of crime, with the added sort of perversity of harsher treatment for those with less serious crimes, if sentence length can be measured, be a measure of that. I have noted a point on remedy that's very much an alternative point, since it's clear that the collateral attack is foreclosed first and second, that there is no colorable constitutional claim. So unless this Court has any questions for me, I will submit. Thank you very much. Thank you, Your Honor. All right. Do we have any rebuttal? Your Honor, just briefly, I would indicate that there is no case law that would make the distinction that the government is attempting to make between, in the equal protection argument under Cordis, that there is some distinction to be made between those that had the sentence reduction versus the newly listed aggravated felony categories. Instead, there is simply still just the argument that by virtue of timing, and timing only, that these people that were not deportable and not aggravated felons all of a sudden found themselves reclassified with no relief whatsoever and treated differently as a result than people similarly situated pre-AEDPA. Thank you. Thank you.
judges: Pregerson, W. Fletcher, Bybee